All right. Good afternoon, Mr. Byrne. You're reserved three minutes for rebuttally whenever you're ready. Thank you, Your Honor. Good afternoon. It may please the court. My name is Michael Byrne, and I represent Appellant Health and Happiness, as well as Zesty Paws. The fundamental issue on appeal here is whether Zesty Paws' claim to be America's number one brand of pet supplements is unambiguously, literally false, even though two major consumer research organizations and Nutramax's own internal documents acknowledge the claim to be true. Even after Nutramax initiated this dispute with us, its own director of retail sales was internally acknowledging at page 987 of the appendix that Nielsen was correct not to identify Nutramax as the relevant brand for that company's products based on the company's, quote, individual branding for its products, unquote, and quote, very limited Nutramax presence, especially no presence on Kosequin. As a result, Nutramax's own June 2023 internal sales presentation expressly acknowledged that Zesty Paws now holds the number one brand spot in supplements. If it was reasonable for two outside companies that specialize in consumer research and for Nutramax's own employees to agree with our number one claims, then at minimum, our claim cannot be read to unambiguously make a statement that is And I'll just point out that, you know, it really is extraordinary, I think, that in this case, Nutramax is seeking to have a court find literally false something that it itself was acknowledging to be true. They don't point to a single case in which facts remotely close to that have been found to support a finding of literal falsity, and we're aware of none. Well, they might have been mistaken, but your point is that that was a reasonable understanding of the term brand, right? Yeah, that consumers could reasonable that consumers feel like a stop all because they said that. That's exactly right. We're not suggesting that it's an admission that binds the company. But if but if but if the company's own retail team looking at how consumers understand branding in the market, and in fact, Nutramax, it's reflected on their packaging, because they refer to Nutramax as the number one pet supplement company. And Kosequin is the number one brand or something, or like a most recommended brand or something. That's exactly right. And the plow case tells us that how companies talk about their how they talk about products and how they talk about what language they use is particularly relevant to a question like this. It's both the way that they're speaking to customers. It's also the way that they speak to distributors. You know, I think it's instructive. If you look at page 959 of the record, there's a presentation that they're doing to Walmart, one of their biggest retailers. And in that they have a chart where they describe here's the list of, you know, the top manufacturers and that Nutramax is at the top. Then they have a list of what are the top brands. Nutramax isn't anywhere on that list, but Kosequin is. Zestipas and Kosequin are. So that's this is Nutramax's own language. These are this is how they're describing themselves in the marketplace distributors to customers. And I think what happened here is that the district court's analysis went off track because it focused on the wrong question. Rather than consider whether consumers would unambiguously understand Zestipas' number one claim to suggest a comparison between the sales of the Zestipas brand on the one hand and the aggregate sales of all 16 distinct individual brands marketed by Nutramax on the other, the district court focused on a different question. Whether Nutramax itself falls within the definition of a brand in the sense that the word Nutramax distinguishes products manufactured by Nutramax from those manufactured by other companies. Now, you know, on that definition, you know, all businesses, you know, can have a corporate brand. But that's not the right question. Procter & Gamble is a corporate brand and it's far better known than Nutramax. But the fact that Procter & Gamble is a brand doesn't render literally false the claim that Tide is the number one brand of laundry detergent. I have a district court at a hearing. First of all, in the complaint, he was asserted that it's not a brand, right? That was the big, that was the theory of the complaint. Or am I wrong about that? What we said is that we don't think that consumers would understand a claim. It's a brand, right? That's it. We said that when consumers hear the claim that Zestipas is the number one brand of pet supplements, that they will not, that consumers would not understand us to be making a comparison between, among other things, Nutramax as a brand of pet supplements. And the district court at a hearing and it pointed to certain evidence that Nutramax, the reason, because we could view Nutramax as a brand, for example, you know, on the websites, Nutramax is the first word on the product listing. It's on, I think there's one example where it's not on the product, but on almost all of these, Nutramax is on the product. As well. So why should we disturb that determination? There may have been some evidence to the contrary, internal communications, but the district court, you know, resolved it in this manner. So why should, why should we disturb it? Well, there's, there's a couple of things. First of all, I don't think that the district court was answering the right question. As your Honor just mentioned, what the district court was focusing on was whether Nutramax is a brand in an abstract sense. Well, maybe you framed the question wrongly to the district court. Well, I don't think that's, I don't think that is how we framed the question to the district court. Well, show me where the district court, how you're framing it to us now. Well, I think, I think what happened is, is that there was a lot of focus on this idea of like a driver brand, but all we were getting, right. So, so what we were getting at with the driver brand is what we're talking about is how would consumers understand a claim that we are the number one brand of pet supplements. And I think what that's getting at is that when consumers interact with products, they tend to think about a particular brand, right. So, you know, as the First Circuit says in Briggs, there is no one definition of brand. It can mean a lot of different things. It can mean one item. It can mean a family of item or it can mean all items that are, that are manufactured by. But you don't deny that it would be possible for somebody to think of Nutramax as a brand. No. But just here, the question is, is it unambiguous that Nutramax would be a brand? And like some people might think that the brands are Coke products and Pepsi products, but some people might also think the brands are Coca-Cola and Dr. Pepper and Pepsi-Cola and Mountain Dew, which, you know, are under those, you know, corporate headaches. And maybe you think of a corporate brand, but maybe you think of the product brand. Right. And that's all you have to say is that it's possible to interpret that way. That's all we have. That's all we have to say. And I think here, because they were, what the court did is it's similar to the error in a way that was made in the Avis case. In that case, Hertz had an advertisement where they said, Hertz has more cars, I'm sorry, Hertz has more new cars than Avis has cars. And the district court looked at that and said, well, the word cars, I know what that means. It's a, you know, it just means vehicles. And so whichever company has more vehicles, that has to be the, you know, that tells you who has, you know, which one is right. And so because Avis had more, owned more vehicles than Hertz owned new vehicles, the court said that's, well, that's literally false. And the Second Circuit, in an opinion by Judge Friendly, reversed and said, no, you have to look at context and how that language would be understood by consumers in the marketplace. And here, you know, we pointed to a lot of evidence that consumers did not, you know, kind of interact with Nutramax as the core brand. That what they interacted with were the individual brands that are part of Nutramax's portfolio. And just to give, you know, some examples of this that I think are really important, and maybe just step back a second. I mean, for Nutramax to show that the only way that consumers could reasonably understand our number one claim is in a way that's literally false, they really have to show two things. One, that consumers would understand Nutramax to be a brand of pet supplements, but then also that all of the individual brands that are manufactured by Nutramax are part of that Nutramax brand of pet supplements. And one of the reasons why that's problematic for them is that by far and away, their best selling brand, Cosequin, is the brand that has, is the most disconnected from Nutramax. So, as Nutramax sort of acknowledged internally, this is at 1066, although Cosequin is the top joint health supplement, is one of the top joint health supplements for pets, consumers don't know that it's made by Nutramax. And they also say... The different part relies on this definition that brand just means anything by which the products can be identified, right? So, even if the Nutramax branding was very subtle and appeared in tiny text at the bottom of a package, it still would meet the district court's definition of a brand, but there's no way that a consumer would understand it as a brand. That's right. And even if Nutramax wasn't located on the package, it could still be a brand. By that definition. Yeah, by that definition. I mean, Newell Brands is a corporate brand. Many people haven't heard of it. It's one of the biggest conglomerates that owns, that has brands, it's one of these companies like Unilever and Procter & Gamble, many people haven't heard of it. It doesn't mean it's not a brand, but when consumers think about products, and this is, again, thinking about Tide, I mean, under their theory of the case, Procter & Gamble would be a brand. So, the statement that Tide is the number one laundry detergent, or Doritos is the number one brand of chips, or Cheerios is the number one brand of cereal, all of those things would be false, because there's some other umbrella brand that you could put, could say has... Yeah, it's possible that's the way brand could be understood. Like, somebody might understand it that way. You're just saying that that's not the obvious reason. And at minimum, it's not unambiguous, right. As somebody who, you know, sort of likes relying on dictionaries sometimes to understand the meaning of words, the mistake of the district court here is that it's applying the dictionary definition shorn of context. That's exactly right. When the word brand appears on a package, the question is, it's invoking how the brand is marketed to consumers. It's not just referring to any possible abstract, you know, conception of what a brand could be. That's right. And I'll just point one last thing. I realize my time is up. But, you know, context, I think it's very clear from the Avis case. And as you're saying, Your Honor, context really matters a lot here. And just in thinking about how consumers interact with brands here, one of the things that Nutramax admits at 1011 of the appendix is that they're the only company in this space that has a multi-brand supplement strategy. All the other top competitors, they acknowledge, leverage a single brand. And so the way that consumers interact with brands in the pet supplement space is that they're looking over and over at brands that are single, cohesive, the same name, same packaging, same look. That's Zetsipas. It's Pet Honesty. It's all the other players. And Nutramax is essentially expecting consumers to uniquely look at Nutramax. Nutramax does appear on the packaging. It says Nutramax at the top. Only on some of them, though. I mean, Cosequin is a great example of this. It's actually not on the packaging of Cosequin. And if you look at- If it did, would that make a difference? Right? So your products are, you know, Zetsipas, Valor Immune Bites, Zetsipas Prebiotic Bites. If the product were obviously marketed as something like Nutramax colon Cosequin supplement, then you'd say Nutramax was part of the brand? Well, it certainly would make it an easier case for them. If they could show- If there was evidence that consumers understood Nutramax to be the relevant brand in that sense. But again, you know, we think that here there's at least, you know, that consumers could at least reasonably understand us to be making a comparison between our single unified brand and other single unified brands out there. And at minimum, you know, the fact that it's very difficult for them to show that consumers would understand Cosequin to be part of the Nutramax brand, even if you just thought that that was the case, that would, you know, also show that it's not. And the district court did not determine whether it's impliedly false or that they had a likelihood of success on that. So like we would remand for the district court to do that in the first instance? You could remand. I mean, frankly, we think that the record is such that you could find in our favor. And the reason for that is because almost always in a case where you're trying to show implied falsity, you need to point to evidence, you know, generally a consumer survey to show that- You introduced that evidence, but the district court made no conclusions from it because it thought it was literally false. Right. I mean, we were the only ones who put in evidence. We think it strongly supports us. It's a survey that shows that when you ask, you know, consumers, what's the brand of- what is Cosequin's brand, 90% say it's Cosequin, you know, very few people, you know, understand it to have a brand of Nutramax. All right. We'll hear from Mr. Bradley. You've three minutes to revoke. Thanks, Mr. Byrne. May it please the court. Kirk Bradley on behalf of Nutramax. I want to pick up where counsel just left off talking about the surveys that Zestipause elicited in this case and that we uncovered in discovery. One of those surveys, it's at A991, shows that when- when we asked the question, we're going to show you a list of brands of pet supplements, brands of pet supplements, and they listed Nutramax as one of the options, Zestipause is one of the options, and several others, and the respondents consistently picked Nutramax at a higher rate than Zestipause. So the notion that the survey evidence presented to the district court supports them- Okay, so that means that it's possible the district court might determine that the statement is impliably false if that's what the survey evidence shows, but we are concerned here about literal falsity, right? We are primarily concerned here with literal falsity, and on that point- I mean, if you say- if I were to say, you know, Dr. Pepper is the number one selling soft drink brand, do you think every consumer would understand that to be a comparison between Dr. Pepper and the entire family of Pepsi-Cola- PepsiCo beverages, and not a comparison of Dr. Pepper with Mountain Dew and Gatorade and whatever the individual brands are? We have a reverse example- That's the only way to understand that? The situation here is the reverse of that, and if my- I may use, because I don't know the product brands as well for the soda space, so if I can refer, for example, because counsel referred to Cheerios, which is a brand owned by General Mills, they own Chex, Cocoa Puffs, a whole bunch of cereals. If General Mills were to come forward and have a claim that said we are the number one brand of cereals, plural, in the USA, Kellogg's would have something to say about that. Kellogg's would say that's not true, that is literally false, and if General Mills' retort was, oh, but we're comparing all of our cereals with just Special K or just Fruit Loops, Kellogg's is false. Both General Mills and Kellogg's do the House of Brands strategy, right? As do the parties here. What? As do the parties here. They've said otherwise, but they're flat wrong. In their product line, their company name is Zesty Paws. They have similar packaging, they're all orange, but for each one of their product names, they have a registered trademark under which they are claiming exclusive rights. One of those is Mobility Bites, one is Probiotic, our Immune Bites. So you're saying the brand is not Zesty Paws, the brand is Zesty Paws Probiotic Bites? I'm saying, like us, they have a master brand that is Zesty Paws, ours is Nutramax, they have sub-brands that are registered trademarks. I mean, even in your example, like if General Mills were to market cereals as, you know, instead of Cheerios and Chex and whatever, General Mills wheat cereal, General Mills corn cereal, General Mills whatever, and Kellogg's were to have the, you know, Special K and Rice Krispies or whatever they have. We're just talking about what's unambiguous, like couldn't somebody understand the relevant brand to be General Mills, because that's the name attached to the wheat cereal, and the relevant brand on the other side to be Rice Krispies or Special K or whatever? The example is impossible for anybody to understand it that way? That's not the standard. In this court's decision in Church and Dwight, this court said that if an advertising message means something different from what reasonable consumers would understand it to mean, that message can be considered false. That's a direct quote. The district court decided that. It's not that it's impossible. You're saying it would be unreasonable for somebody in that hypothetical to think that General Mills was the brand and that the comparison was between General Mills and Special K. Why is that unreasonable? Because in the example your Honor gave, you gave the example of, I don't remember the exact words, but General Mills and, you know, Corn Flakes, Puff Flakes, that's generic. But like they're relying on, you know, the snazzy brand name is General Mills. But here, as I explained, Zesty Paws has the jazzy sub-brand name because they have registered trademark rights for these names. Probiotic Bites, Our Immune Bites. If my wife sends me to the store and says, go pick up Zesty Paws, that's not a thing. You don't disagree that the standard is reasonable consumers, right? Because you just said it has to be reasonable. A consumer is not checking the trademark registries at the patent office or whatever, right? So like if a consumer sees on the shelf Zesty Paws and then some description of the product, it's unreasonable for them to think that Zesty Paws is the brand? If they are claiming, as they have here, to be the number one brand of pet supplements, plural, the whole category in the USA, it is unreasonable for consumers to look at that and say, oh, they're comparing their whole line of products with any one product from Nutramax. That is indeed unreasonable. The district court found as much. The district court's decision was narrower than that and maybe it was a problem of framing or not. The district court seemed to just look at whether or not Nutramax was a brand or not. Some of these other things that we're discussing that you're mentioning don't really seem part of the district court's analysis. Can you explain that? Was it because they framed it a different way to the district court? The district court did not go far enough. Yeah, and to your, I'll answer the question and to your honor's question to my colleague here, the way my colleague presented this to the district court was, is the question, is Nutramax a brand? And the judge said it in her order at SPA 6, the party's key dispute has been whether Nutramax is a brand. That is the argument they made. They shifted eventually to talking about a driver brand and the judge struck that down too because she said at SPA 8, there is no evidence that consumers understand the number one claims to refer to a driver brand. This was a concoction they had come up with. So the district court concluded on that fundamental question of whether Nutramax could be considered a brand, that it was unambiguous that it was a brand. There are a lot of other issues that could flower from that. You could have a reasonable question to think there's two different brands on the same product, right? But the question whether Nutramax itself is a brand is really all the district court decided and said that it's unambiguous that they're a brand. She decided that it is unambiguously, literally false, which is reviewed now for clear error. As part of that analysis, she decided whether Nutramax is a brand or not, right? I'm sorry. Just whether it's a brand or not. I mean, I read the decision several times to see whether there's something else beyond whether or not it's a brand. And that's, she framed it that way. And that was the only... She framed it according to the way Zesty Paws was challenging our literal falsity, our falsity claim. The argument you made to me was not that Nutramax is unambiguously a brand. It's that Zesty Paws is unambiguously not a brand. Because you said the relevant brands are Zesty Paws prebiotic bites, Zesty Paws allergen bites, Zesty Paws whatever. You said those are the relevant brands. But the district court didn't say that. The district court said Zesty Paws is a brand, but so is Nutramax unambiguously. I'm not sure I followed entirely. But we say today and we said then... Zesty Paws registers all these different product names as separate trademarks. Those are different brands. Zesty Paws is registered as a brand. That is a brand. It's a master brand. Underneath that, they have a whole line of products. The whole, the individual line of products are individually registered and they're claiming exclusive rights. Just like in Nutramax. We are a master brand. It would be unreasonable for a consumer not to understand that Zesty Paws is a brand and Zesty Paws probiotic bites is also a brand. Nutramax is a brand and Cosa Quit is also a brand. And if Zesty Paws says we're the number one brand, they're referring not to the Zesty Paws probiotic bites, they're referring to Zesty Paws and it's necessarily a comparison between Zesty Paws and Nutramax. Not between Zesty Paws and Cosa Quit. Again, the standard from this court's decision in Church and Dwight is not whether necessarily it is that way. In order to be reasonable. You're saying if a consumer has a different view of it, that would be unreasonable. It would be unreasonable. The standard is simply whether if the message means something different than what consumers would reasonably understand it to mean, it can be false. Literally false. That's what that Church and Dwight was saying. And in our situation, they're making the broad, sweeping claim that they are the number one brand of pet supplements. That is literally not true. It is literally false. Because if you add up the sales and unit sales of the products that are pet supplements and you look at the brands sold... So you were saying earlier that it's not true that Zesty Paws has a unitary brand as opposed to a house of brands. You're saying we should understand them both to pursue a house of brands strategy. So then let me just make this a hypothetical. If there was one company that was following the house of brands strategy and one company that had an overall brand, could a reasonable consumer understand a claim about number one brand to refer to the unitary brand in comparison to each individual house of brands? The way it was presented at the district court, which was correct, is the consumer's reason we would understand an apples-to-apples comparison. And that scenario, as I understood it, would be an apples-to-oranges comparison that consumers would not reasonably understand. And again, not to harp on it too much, but the standard here is, does the message mean something different than consumers would reasonably understand it to mean? Consumers would reasonably understand them to mean that when they say they're the number one brand they have pet supplements, porno as a category. Why would you think it would be unreasonable for a consumer not to understand it in comparison to Nutramax when, as opposing counsel pointed out, a lot of the Nutramax, like Cosaquin, the biggest Nutramax brand, doesn't even have Nutramax branding on it. It just says Cosaquin. That is... Like, it can't be unreasonable. It is unreasonable. To think that the relevant brand is Cosaquin, can it be? The argument that Cosaquin does not have the brand on the package is flat wrong. A256, 255, and 256 show the Cosaquin packaging. The Nutramax on that one happens to be on the back. On almost all the products, it is on the front. All right, fine, whatever. I mean, so... But it's on every product. It says Nutramax on the back of the package. You're saying it would be unreasonable for a consumer to look at the big letters that says Cosaquin on the front of the package and not flip it over and say, oh, it's also a Nutramax brand. That's unreasonable for a consumer to do. The big letters on the front as opposed to investigating the back of the package. It's not the standard. Because if reasonable consumers understand it to mean something different than what it's actually saying, then it's literally false. And here, you know, there's multiple brands. And the judge found at SPA 7, I believe, that just because... SPA 10. That Cosaquin is a brand does not mean that Nutramax is not also a brand. And as I started in my talk today, in the survey that Zesty Paws conducted over a series of years internally before this litigation began... All right, but I understand that. But, you know, it's true that it's literally, like, it's, you know, linguistically possible for both of them to be brands, right? The question is, is this literally false, meaning it's unambiguous? Because they claim to be the number one brand. So, like, let's say all of your products look like Cosaquin. That it had a brand name like Cosaquin or Dasaquin or whatever in big letters on the front. And Nutramax only appeared in tiny little print on the back of the package way at the bottom. Would it not be reasonable for a consumer to think that the brands were Cosaquin, Dasaquin, Imiquin, and whatever, and not... And regard Nutramax as the parent company, but not the brand? If that's what the evidence showed, then perhaps. But here, the district court found that there's no evidence. If it's possible, then doesn't this just depend on what the consumer perceptions are? And so that means it's about impliedly false. It's not literally false, because it's not impossible. It's not inherently unreasonable for a consumer to think the relevant brands are the brands under which it's marketed, as opposed to the parent company. But the district court found, and here we're on a PI stage, reviewed for clear error. And it's clear error whether we're likely to show, once we get to the merits phase, literal falsity. And here, the judge found, on the record, that our experts were persuasive and credible, and the evidence showing that consumers view it our way. And she found no evidence to support their view. All right. So what about the branding that's on some of your products, where it refers to the brand under which it's marketing as the number one veterinary recommended brand, and then refers to Nutramax as the number one supplement company? Doesn't that reflect a possible understanding of what the labels mean? The label I understand, Your Honor, to be referring to, it's the one my friend here pointed to, again, is an A255. And that one says, in a bold diamond, it says, number one veterinary and recommended brand. This is on Cosequin. But right next to it, it says, number one veterinary and recommended retail joint health supplement brand. We're not making a claim the way they're making a claim. They claim to be number one brand of all pet supplements. The whole category. No, I understand. You're saying Cosequin is the number one veterinary and recommended brand. But then you also say, next to Nutramax, at the top of a Dasaquan product, number one veterinary and recommended supplement company. And underneath that, it says joint health. Couldn't a reasonable consumer understand Dasaquan to be the brand, and Nutramax to be the company? It's not what the evidence showed in the district court. And when we're reviewing, when this court's reviewing. So you could have written, Dasaquan, number one veterinary and recommended brand. And on the same package, Nutramax, number one veterinary and recommended brand. If it was true, yes, Your Honor. OK. All right. Thank you. Mr. Barron, you have three minutes to move on. Thank you, Your Honor. I just want to make a couple points. Let me first just begin with the Church and Dwight case, because counsel brought it up a number of times. But I think he misunderstands it. What Church and Dwight says is, if an advertising message means something different from what reasonable consumers would understand it to mean, that message can be considered false. So if I had a message that said, we sell the most amount of cars, but what I meant by that was planes, that's the circumstance in which Church and Dwight would say that the message is false. If reasonable consumers can understand the message the way that we say they can, which is, of course, what our argument is, Church and Dwight has no application. To your point, Judge Bianco, you asked, how do we think about the standard of review here in relation to the district court? The Henriquez case makes clear that a district court abuses its discretion in two instances that I think are relevant here. One, where the district court states the right principle but misapplies it. And then two, where there's a clear factual error. And here, I think both of those things are applicable. With respect to the first, the district court recognized that it should be thinking about that you can only have a literally false message if it's unambiguous. But in answering that question, rather than look to whether consumers could only understand our number one claims to suggest a comparison between our single unified brand and the aggregate of all 16 Nutramax brands, the court only looked to whether Nutramax was a brand at all. And as we've discussed, I think that was the wrong inquiry. On the clear error piece, something that Nutramax points out over and over in its brief is that the district court said that there was, quote, no evidence to support our, how we say consumers would understand the number one claims. And that just can't be right. I mean, here we have two major consumer research organizations that looked at this, that understood, that looked at how consumers think about brands. And both of them came to the conclusion that the relevant brands are Cosequin, Dasequin, Zest-E-Pause, not Nutramax. And of course, we have Nutramax's own, you know, statements over and over in its internal documents and the statements that it's making to, both to customers on its packaging, as well as the distributors. That can't be no evidence. And so at minimum, that is a clear error. I thought Mr. Bradley's argument that a reasonable consumer would understand any claim to be making a one-to-one comparison. And so they look at the level of generality at which Zest-E-Pause is, and that's the parent company. And so they wouldn't necessarily compare that to Nutramax, as opposed to Cosequin. Yeah, so I think the right way to think about it is, is that what is the apples to apples comparison that a consumer would make? And I think the comparison that a consumer would make is, if we're saying that the Zest-E-Pause brand is the number one brand of pet supplements, it's going to look at the Zest-E-Pause brand, which is a unified brand with similar words, similar look, similar font, and it's going to say what other brands are out there. That's what Zest-E-Pause must be comparing to. They're not going to say, oh, they're comparing to this collection of 16 totally different brands with totally different packaging on which Nutramax isn't even on the front of them. I mean, they say Nutramax is, you know, it is at the top of some of those packages, but it's not at others. And, you know, if you're going to rely on the fact that it's at the top of some of your packages to say, hey, we've got a brand, then the fact that there's other packages out there that don't have it, that you're doing TV advertisements, as we point to on page 13 of the reply brief, in which, you know, full TV ads for Cosequin in which Nutramax isn't mentioned at all, certainly would be reasonable for consumers to think that the relevant brand is Cosequin, not Nutramax. And, of course, that's what Nutramax was saying internally, where it says on page 991, Nutramax is not even on the Cosequin package. This is Nutramax saying this, not us. It can't be the brand. So, for all of those reasons, we think that the district court erred by finding that the number one claim... We didn't have Mr. Bradley's argument that the relevant brand actually is Zesty Paws, Allergy Bites, or, you know, the particular product name. Yeah, so we were really surprised to see them make this argument in their brief that the companies have identical brand architecture. And, again, that's just not true. That's not the way that consumers experience the brands. And Nutramax has admitted this in their own private, you know, behind-the-scenes documents. They say Nutramax is the only major player using a multi-brand supplement, which we have a complicated, disjointed, expensive brand strategy. This is at 10.11, 10.22 of the record. We have zero brands that cross category, no halo effect across brands, whereas Zesty Paws at 10.07 uses unified brand. So they recognize that we have a fundamentally different architecture. And, again, their documents show that when they list out for Walmart on page 959, who are the relevant brands, they put Cosequin, but they also put Zesty Paws. And so that shows that that's how they recognize it, that they understand that that's how consumers recognize it. And, at minimum, it can't be read unambiguously to go the other way. So the district court, we think, Eric, on liberal falsity, you should reverse. Thank you. Thank you both for a reserved decision. Have a good day.